# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RICHMOND AMERICAN HOMES OF NEVADA, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RICHARD STANTON et al., | ) ) |
| Defendants. | ) ) ) |

2:12-cv-1908-RCJ-CWH

**ORDER**

Currently before the Court is Plaintiff's Emergency Motion to Stay NRS Chapter 40 Process Pending Outcome of Declaratory Relief Action (#10).

## BACKGROUND

On November 7, 2012, Plaintiff Richmond American Homes of Nevada, Inc. ("Richmond"), a Colorado corporation, filed a complaint for declaratory relief in this Court against Defendants Richard Stanton, Zayda Bustos, and Anthony and Devron Turner (collectively "Defendants"). (Compl. (#1) at 1-2). The complaint alleged the following. (*Id.* at 2). Stanton was the owner of 5972 Balsam Pine Drive, Las Vegas, Nevada 89142. (*Id.*). Bustos was the owner of 2729 Morning Break Court, Las Vegas, Nevada 89142. (*Id.*). The Turners were the owners of 5871 Windy Point Trial, Las Vegas, Nevada 89142. (*Id.*). Defendants own homes built and sold by Richmond in a development known as Sunrise Meadows aka Sunrise Valley Estates. (*Id.*). On September 24, 2012, Defendants sent Richmond a statutory notice of construction defects ("the Notice") pursuant to NRS §§ 40.600-40.695. (*Id.*).

The complaint alleged the following. (*Id.*). The Notice purported to give notice on behalf

of Defendants and all similarly-situated, unnamed homeowners in the Sunrise Valley Estates development which consisted of a total of 316 homes. (*Id.* at 2-3). The Notice informed Richmond that Defendants alleged defects in the Aspen horizontal cased evaporator coil frames within Defendants' homes. (*Id.* at 3). Richmond alleged that the Notice failed to comport with the requirements of NRS § 40.645, that Defendants lacked standing to pursue claims on behalf of all homeowners, that the Notice improperly attempted to prevent Richmond from sending notice directly to homeowners regarding inspections and claims, and that Defendants' claims were not supported by inspection of a "valid and reliable representative sample" of the homes at issue. (*Id.*).

The complaint alleged that diversity jurisdiction existed because the parties were citizens of different states and the amount in controversy exceeded $600,000. (*Id.*). Richmond anticipated that Defendants planned to assert NRS Chapter 40 damages for all 316 homes in excess of $2,000 per home. (*Id.* at 3-4).

In the first and only claim for relief, Richmond alleged that an actual controversy existed between Richmond and Defendants as to the parties' rights, responsibilities, and obligations pursuant to NRS Chapter 40 and the validity, scope, and sufficiency of the Notice. (*Id.* at 4). Richmond asserted that the Notice was statutorily defective and failed to provide proper notice of Defendants' claims on behalf of homeowners within Sunrise Valley Estates.[1] (*Id.*). Richmond asserted that "the number of homes allegedly inspected do not constitute a 'valid and reliable representative sample' pursuant to NRS § 40.645(4)(b)[2]. (*Id.* at 5). Richmond sought reasonable attorneys' fees, costs, expert costs, and expenses; a declaration of rights, responsibilities, and obligations between the parties, and a stay of the NRS Chapter 40 period pending the resolution of this matter. (*Id.*).

---

[1] Richmond does not dispute the sufficiency of the Notice as to the named Defendants. (Reply to Mot. to Stay (#16) at 3, 5). Richmond disputes the sufficiency of the Notice as to the unnamed similarly-situated home owners in Sunrise Valley Estates. (*Id.*).

[2] The complaint cites NRS § 40.6452(4) multiple times in regard to the "valid and reliable representative sample." (*See* Compl. (#1) at 3-5). The Court believes that Richmond meant to cite to NRS § 40.645(4)(b).

2

Richmond attached a copy of the Notice to the complaint.  (*See* Notice (#1) at 8-46). The Notice stated that it was "being sent on behalf of [Defendants], individually and on behalf of all similarly situated homeowners in the Sunrise Valley Estates (hereinafter 'Claimants')." (*Id.* at 9).  The Notice informed Richmond that Claimants were making a claim against it for a common mechanical system defect in their homes.  (*Id.*).  The defect involved Aspen-made horizontal cased evaporator coil frames that were prematurely corroding because they had been designed, manufactured, supplied and installed with untreated, exposed metal edges and surfaces, including sheared and punched frame struts and self drilling/tap screws.  (*Id.*).

The Notice was made and based on the expert report of Harvey Kreitenberg and Associates and was attached to the Notice.  (*Id.* at 9-10).  The Notice stated that the expert report was

> based on a valid and reliable representative sample and inspection of the components of the residences and appurtenances within the Sunrise Valley Estates development. This include[d] an inspection of a representative number of homes and many visual inspections confirming the same defect throughout the community regardless of location, building, or model type, and/or other variables unrelated to the defective fan coils and resulting damage–which [were] the same or substantially similar throughout the homes.  The report is also based on Mr. Kreitenberg's evaluation of this same defect in other communities within Las Vegas, Nevada, and some of this information is well known to you because you have already actively investigated, litigated and/or resolved those matters.  So, the information upon which the notice is based is set forth with specificity in Mr. Kreitenberg's report, or is otherwise already in your possession.

(*Id.* at 10).  The Notice also stated that Claimants had reason to believe that Richmond was presently prosecuting a legal action against Aspen Manufacturing Holdings, Inc., the manufacturer of the defective fan coil housing units, based on the same defects identified in the Notice, but in another Las Vegas community called Echo Canyon.  (*Id.* at 10-11).  The Notice stated that the same defect was under investigation in another Las Vegas community called Seasons based on another NRS Chapter 40 pre-litigation notice.  (*Id.* at 11).  The Notice stated that the current notice was independent of the other notices.  (*Id.*).  The Notice stated that "[i]n related instances, you have already performed such inspections and already know about the claims."  (*Id.* at 12).

Kreitenberg's expert report contained various pictures of five different residences in the

3

Sunrise Valley Estates development.  (Kreitenberg Report (#1) at 31-44).  The report stated in part:

> The opinions set forth in this report are based on a valid and reliable representative sample of the common heating and air conditioning systems used in the residences of the development and further supported by my investigations and evaluation of data from two other Las Vegas communities with the same problem: Echo Canyon and Seasons.  The opinions are also based on a survey of resultant property damages evidenced at a majority of homes within the development; notably, the presence of rust stains on landscape rock which is consistent with the same defect in every home in this community and others like it.  Additionally, there are homeowner/occupant complaints and confirmation of the reported conditions.  For these reasons, it is my opinion that the defects and damages identified in this report exist in all homes throughout the development, which are all similarly situated regardless of plan or model type, or any other design or construction variable unless otherwise noted.

(*Id.* at 29).

The pending motion now follows.

## LEGAL STANDARD

"A district court has inherent power to control the disposition of the [cases] on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  When considering a motion to stay, the district court must consider: (1) the possible damage to the non-moving party, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  *Id.*

## DISCUSSION

Richmond files an emergency motion to stay the NRS Chapter 40 pre-litigation process, including all deadlines and mediation, pending the outcome of its declaratory relief action. (Mot. to Stay (#10) at 1).  Richmond asserts that without the stay the entire object of its action for declaratory relief would be moot because Richmond would be forced to proceed with the Chapter 40 pre-litigation process as if sufficient notice had been given for all the homes in Sunrise Valley Estates even if it had not.  (*Id.* at 2).  Richmond asserts that this motion must

4

be decided immediately because the Chapter 40 deadlines are rapidly approaching. (*Id.*). Richmond contends that the primary issue in this case is "whether the Chapter 40 Notice satisfied the requirements of Chapter 40 to provide notice on behalf of all homeowners in the Sunrise Valley Estates development, such that Richmond is required to take action in response to the Notice." (*Id.* at 4). Richmond argues that if a stay is not granted it would suffer irreparable injury because it would moot the purpose of the declaratory relief action and it would be "forced to potentially lose important rights." (*Id.*). Richmond asserts that Defendants would suffer no ascertainable harm, prejudice or otherwise, because they would only suffer a slight delay in the Chapter 40 process. (*Id.*). Richmond argues that it would suffer irreparable harm because it would suffer the threatened loss of prospective customers and damages to its business's goodwill and reputation. (*Id.* at 6-7). Richmond asserts that granting the stay would promote judicial economy because it would prevent further litigation related the Chapter 40 Notice until this Court determines the sufficiency of the Notice. (*Id.* at 8). Richmond asserts that Defendants purported to provide evidence of the alleged defect in only three of the 316 homes in Sunrise Valley Estates. (*Id.* at 6).

In response, Defendants oppose the motion for stay. (Opp'n to Mot. to Stay (#15) at 1).[3] Defendants assert that all 316 homes in Sunrise Valley Estates have attic-housed forced air units made by Aspen Manufacturing, Inc. (*Id.* at 2). Defendants assert that, after Richmond received the Notice, Richmond asked to inspect the named Defendants' homes on November 7, 2012, and then filed its complaint on the same day and its motion to stay two days later. (*Id.* at 4). Defendants assert that the Echo Canyon residents raised claims with Richmond regarding their defective forced air systems in 2009 and that the Seasons residents raised claims regarding their defective forced air systems in 2012. (*Id.* at 6, 10). Defendants argue that Richmond is using the Court to frustrate and delay justice under false pretenses

---

[3] Defendants assert that this Court may lack jurisdiction over the matter if the Court only considers damages for the three named claimants' homes rather than the 313 remaining similarly-situated homeowners. (Opp'n to Mot. for Stay (#15) at 4-5). The Court finds that it has jurisdiction in this case because Defendants are attempting to assert a construction defect claim for the 316 homes in the development. (*See* Notice (#1) at 9).

5

because Richmond knows what this claim is about and can make an informed choice about how to respond. (*Id.* at 10). Defendants also assert that the Notice contained information about 10 homes, not three, and that pictures of five homes are in the Notice. (*Id.* at 13 n.8). Defendants analyze the motion for stay as if it were one for a motion for preliminary injunction. (*Id.* at 13-15).

In reply, Richmond asserts that the stay is necessary because the underlying action asks this Court to determine the sufficiency of the Notice with respect to the unnamed homeowners of the remaining 313 residences. (Reply to Mot. to Stay (#16) at 3). Richmond asserts that the Sunrise Valley Estates development is separate and distinct from any other community constructed by Richmond because it was constructed over different periods of time by different subcontractors and the forced air units may have been supplied/manufactured/distributed by different companies. (*Id.* at 3-4). Richmond asserts that it is complying with the Chapter 40 rights of the named homeowners and, thus, is not restricting any named Defendants' rights. (*Id.* at 5-6).

The Nevada Supreme Court has held that NRS Chapter 40 provides contractors with an opportunity to repair constructional defects in order to avoid litigation. *D.R. Horton, Inc. v. Eighth Judicial Dist. Court ex rel. County of Clark*, 168 P.3d 731, 737 (Nev. 2007). To ensure that contractors are given an opportunity to repair, the Nevada Legislature requires a claimant to give the contractor notice and, based on that notice, to allow the contractor time and the opportunity to inspect and make repairs when a defect is verified. *Id.* "A claimant's failure to comply with those requirements before filing a constructional defect action results in the dismissal or postponement of that action until the claimant complies with those requirements." *Id.*

Nevada Revised Statute § 40.645 sets forth the requirements for a pre-litigation construction defect notice. One notice may be sent relating to all "similarly situated owners of residences or appurtenances within a single development" that allegedly have common constructional defects if:

(a) An expert opinion is obtained concerning the cause of the common

>    constructional defects and the nature and extent of the damage or injury resulting from the common constructional defects;
>
>    (b) That expert opinion concludes that based on <u>a valid and reliable representative sample</u> of the components of the residences and appurtenances included in the notice, it is the opinion of the expert that those similarly situated residences and appurtenances may have such common constructional defects . . .

Nev. Rev. Stat. § 40.645(4)(a)-(b) (emphasis added).

In *D.R. Horton*, the Nevada Supreme Court held that an "adequate extrapolated pre-litigation notice must have a reasonable statistical basis to describe the alleged defects and their locations in reasonable detail sufficient to afford contractors a meaningful opportunity to repair the alleged defects." *D.R. Horton*, 168 P.3d at 735. The Nevada Supreme Court established the reasonable threshold test which every pre-litigation notice must satisfy if challenged by a contractor. *Id.* at 739. Under the test, an extrapolated notice is valid only if it identifies the subset or characteristics of the subset to which it applies. *Id.* at 740. The Nevada Supreme Court held that, in order to achieve the minimum statistical basis that the reasonable threshold test requires, the district court should "require the claimants' expert to test and verify the existence of the alleged defect in at least one of the homes in each subset of homes included within the scope of the extrapolated notice. Additionally, the claimants must provide the address of each home tested and clearly identify the subset of homes to which the pre-litigation notice applies." *Id.* The district court must employ its wide discretion in determining whether a valid and representative sample has been used for the size and make-up for each subset. *Id.* In exercising its discretion, the district court may determine that a notice is not reasonable unless a defect is confirmed in more than one home in each subset. *Id.*

In this case, the Court grants the motion to stay the NRS Chapter 40 process as to the unnamed claimants pending the outcome of the declaratory relief action. First, there is little possible damage to the named Defendants in this case. Richmond is engaging in the Chapter 40 process with Stanton, Bustos, and the Turners because Richmond does not dispute the Notice with respect to those claimants. (*See* Reply to Mot. to Stay (#16) at 5). Instead,

Richmond disputes whether the Notice satisfies the requirements to provide notice for all similarly situated home owners in the development.  Second, if this Court does not stay the Chapter 40 proceedings, Richmond faces the hardship of having its declaratory action denied as moot.  Third, based on the pleadings currently before the Court, the Court finds that Richmond's challenge to the sufficiency of the Notice may have merit.  The Court will need to determine whether the Notice satisfies the reasonable threshold test.  Kreitenberg's report states that his report is based on a valid and a reliable representative sample but does not detail what that sample was.  For instance, the report only contains pictures of five different homes in the Sunrise Valley Estates, but Defendants now claim in the pleadings that Kreitenberg looked at 10 homes.  (*See* Opp'n to Mot. to Stay (#15) at 13 n.8).  The Notice does not contain the address of each home tested.  Moreover, both Kreitenberg's report and Defendants' pleadings, appear to argue that Richmond has sufficient notice of the alleged defects based on similar notices given to it by the Echo Canyon and Seasons' communities.  The Court notes that NRS § 40.465(4) requires that the valid and reliable representative sample be taken from the same development.

As such, the Court grants Richmond's Emergency Motion to Stay NRS Chapter 40 Process Pending Outcome of Declaratory Relief (#10).  The Court further notes that the stay is granted with respect to whether the Notice is sufficient as to all similarly situated homeowners and not to the named Defendants.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Emergency Motion to Stay NRS Chapter 40 Process Pending Outcome of Declaratory Relief (#10) is GRANTED.

DATED: This _ 11th day of December, 2012.

_____
United States District Judge