# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RICHMOND AMERICAN HOMES OF NEVADA, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 2:12-cv-1908-RCJ-CWH ) |
| RICHARD STANTON et al., | ) **ORDER** ) |
| Defendants. | ) ) |

Currently before the Court is Defendants' Motion for Summary Judgment (#18).

## BACKGROUND

On November 7, 2012, Plaintiff Richmond American Homes of Nevada, Inc. ("Richmond"), a Colorado corporation, filed a complaint for declaratory relief in this Court against Defendants Richard Stanton, Zayda Bustos, and Anthony and Devron Turner (collectively "Defendants"). (Compl. (#1) at 1-2). The complaint alleged the following. (*Id.* at 2). Stanton was the owner of 5972 Balsam Pine Drive, Las Vegas, Nevada 89142. (*Id.*). Bustos was the owner of 2729 Morning Break Court, Las Vegas, Nevada 89142. (*Id.*). The Turners were the owners of 5871 Windy Point Trial, Las Vegas, Nevada 89142. (*Id.*). Defendants owned homes built and sold by Richmond in a development known as Sunrise Meadows aka Sunrise Valley Estates. (*Id.*). On September 24, 2012, Defendants sent Richmond a statutory notice of construction defects ("the Notice") pursuant to NRS §§ 40.600-40.695. (*Id.*).

The complaint alleged the following. (*Id.*). The Notice purported to give notice on behalf of Defendants and all similarly-situated, unnamed homeowners in the Sunrise Valley Estates

1 development which consisted of a total of 316 homes.  (*Id.* at 2-3).  The Notice informed
2 Richmond that Defendants alleged defects in the Aspen horizontal cased evaporator coil
3 frames within their homes.  (*Id.* at 3).  Richmond alleged that the Notice failed to comport with
4 the requirements of NRS § 40.645, that Defendants lacked standing to pursue claims on
5 behalf of all homeowners, that the Notice improperly attempted to prevent Richmond from
6 sending notice directly to homeowners regarding inspections and claims, and that Defendants'
7 claims were not supported by inspection of a "valid and reliable representative sample" of the
8 homes at issue.  (*Id.*).

9       In the first and only claim for relief, Richmond alleged that an actual controversy existed
10 between Richmond and Defendants as to the parties' rights, responsibilities, and obligations
11 pursuant to NRS Chapter 40 and the validity, scope, and sufficiency of the Notice.  (*Id.* at 4).
12 Richmond asserted that the Notice was statutorily defective and failed to provide proper notice
13 of Defendants' claims on behalf of homeowners within Sunrise Valley Estates.[1]  (*Id.*).
14 Richmond asserted that the number of homes allegedly inspected do not constitute a "valid
15 and reliable representative sample" pursuant to NRS § 40.645(4)(b)[2].  (*Id.* at 5).  Richmond
16 sought reasonable attorneys' fees, costs, expert costs, and expenses; a declaration of rights,
17 responsibilities, and obligations between the parties, and a stay of the NRS Chapter 40 period
18 pending the resolution of this matter.  (*Id.*).

19       Richmond attached a copy of the Notice to the complaint.  (*See* Notice (#1) at 8-46).
20 The Notice stated that it was "being sent on behalf of [Defendants], individually and on behalf
21 of all similarly situated homeowners in the Sunrise Valley Estates (hereinafter 'Claimants')."
22 (*Id.* at 9).  The Notice informed Richmond that Claimants were making a claim against it for

---

[1] Richmond does not dispute the sufficiency of the Notice as to the named Defendants. (Reply to Mot. to Stay (#16) at 3, 5; Opp'n to Mot. for Summ. J. (#21) at 3).  Richmond disputes the sufficiency of the Notice as to the unnamed similarly-situated home owners in Sunrise Valley Estates. (Reply to Mot. to Stay (#16) at 3, 5; Opp'n to Mot. for Summ. J. (#21) at 5).

[2] The complaint cites NRS § 40.6452(4) multiple times in regard to the "valid and reliable representative sample." (*See* Compl. (#1) at 3-5).  The Court believes that Richmond meant to cite to NRS § 40.645(4)(b).

2

a common mechanical system defect in their homes. (*Id.*). The defect involved Aspen-made horizontal cased evaporator coil frames that were prematurely corroding because they had been designed, manufactured, supplied and installed with untreated, exposed metal edges and surfaces, including sheared and punched frame struts and self drilling/tap screws. (*Id.*).

The Notice was made and based on the expert report of Harvey Kreitenberg and Associates and was attached to the Notice. (*Id.* at 9-10). The Notice stated that the expert report was

> based on a valid and reliable representative sample and inspection of the components of the residences and appurtenances within the Sunrise Valley Estates development. This include[d] an inspection of a representative number of homes and many visual inspections confirming the same defect throughout the community regardless of location, building, or model type, and/or other variables unrelated to the defective fan coils and resulting damage–which [were] the same or substantially similar throughout the homes. The report is also based on Mr. Kreitenberg's evaluation of this same defect in other communities within Las Vegas, Nevada, and some of this information is well known to you because you have already actively investigated, litigated and/or resolved those matters. So, the information upon which the notice is based is set forth with specificity in Mr. Kreitenberg's report, or is otherwise already in your possession.

(*Id.* at 10). The Notice also stated that Claimants had reason to believe that Richmond was presently prosecuting a legal action against Aspen Manufacturing Holdings, Inc., the manufacturer of the defective fan coil housing units, based on the same defects identified in the Notice, but in another Las Vegas community called Echo Canyon. (*Id.* at 10-11). The Notice stated that the same defect was under investigation in another Las Vegas community called Seasons based on another NRS Chapter 40 pre-litigation notice. (*Id.* at 11). The Notice stated that the current notice was independent of the other notices. (*Id.*). The Notice stated that "[i]n related instances, you have already performed such inspections and already know about the claims." (*Id.* at 12).

Kreitenberg's expert report contained various pictures of five different residences in the Sunrise Valley Estates development. (Kreitenberg Report (#1) at 31-44). The report stated in part:

> The opinions set forth in this report are based on a valid and reliable representative sample of the common heating and air conditioning systems used in the residences of the development and further supported by my investigations and evaluation of data from two other Las Vegas communities with the same

> problem: Echo Canyon and Seasons. The opinions are also based on a survey of resultant property damages evidenced at a majority of homes within the development; notably, the presence of rust stains on landscape rock which is consistent with the same defect in every home in this community and others like it. Additionally, there are homeowner/occupant complaints and confirmation of the reported conditions. For these reasons, it is my opinion that the defects and damages identified in this report exist in all homes throughout the development, which are all similarly situated regardless of plan or model type, or any other design or construction variable unless otherwise noted.

(*Id.* at 29).

The Notice stated that in order to satisfy the inspection requirements of NRS Chapter 40, Defendants "submit that any such inspections, to the extent reasonable and necessary, must be agreed, conducted and coordinated with the above-referenced law firm. The failure to do so may result in legal action and/or equitable action to preserve the legal rights and protect the interests of the development's owners." (*Id.* at 12). The Notice also stated that "[a]t the request of the Claimants, all communications, written, verbal or otherwise–including those to similarly situated development members, are requested to be made to, and through, the law firm identified below." (*Id.* at 13).

In November 2012, Richmond filed an Emergency Motion to Stay NRS Chapter 40 Process Pending Outcome of Declaratory Relief Action. (Mot. to Stay (#10)). In December 2012, this Court granted the motion to stay with respect to whether the Notice was sufficient as to the similarly situated homeowners but not to the named Defendants. (Order (#19) at 8). In that order, the Court noted that:

> The Court will need to determine whether the Notice satisfies the reasonable threshold test. Kreitenberg's report states that his report is based on a valid and a reliable representative sample but does not detail what that sample was. For instance, the report only contains pictures of five different homes in the Sunrise Valley Estates, but Defendants now claim in the pleadings that Kreitenberg looked at 10 homes. (*See* Opp'n to Mot. to Stay (#15) at 13 n.8). The Notice does not contain the address of each home tested. Moreover, both Kreitenberg's report and Defendants' pleadings, appear to argue that Richmond has sufficient notice of the alleged defects based on similar notices given to it by the Echo Canyon and Seasons' communities.

(*Id.*).

In response to this Court's order, Defendants issued a supplemental notice to Richmond "meant to address some of the concerns reflected in Judge Jones' December 11,

4

2012 Order." (Supp. Notice (#22-1) at 2). The supplemental notice attached a "matrix of the 10 homes inspected by Mr. Kreitenberg along with his corresponding field notes and photographs." (*Id.*). They also included "some non-expert photographs showing the rust at 8 other homes, taken random by [the attorney's] staff member(s) who were at the community before the notice [went] out." (*Id.*). They included "a site map to indicate where all these homes [were] located within the Sunrise Valley estates community." (*Id.*).

The matrix stated that Kreitenberg had inspected ten homes in Sunrise Valley Estates: 5912 Balsam Pine, 5972 Balsam Pine, 5883 Glory Canyon, 2729 Morning Break, 2693 Mossy Oaks, 5820 Rainbow Bridge, 5826 Rainbow Bridge, 5886 Rainbow Bridge, 2733 Windy Breeze, and 5871 Windy Point. (*Id.* at 3). The matrix stated that Kreitenberg had observed exterior staining at all ten homes. (*Id.*). The matrix also showed that Kreitenberg had only inspected one home internally with respect to looking at the "FAU1 Coil Opnd" and "FAU2 Coil Opnd."[3] (*Id.*). The one home that he inspected, 5886 Rainbow Bridge, contained the "FAU1 Coil Opnd." (*Id.*). The photos attached to the supplement are consistent with the matrix and demonstrate that Kreitenberg only inspected one home internally. (*See* Exhibits (#22-1, 22-2, 22-3)).

## LEGAL STANDARD

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and

---

[3] FAU is the abbreviation for "Forced Air Unit."

5

evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

**DISCUSSION**

Defendants filed a motion for summary judgment arguing that Richmond's declaratory relief claims were ripe for determination.[4] (Mot. for Summ. J. (#18) at 1-2). Defendants argue that the Court has a copy of the Notice and can decide whether it satisfies the "reasonable threshold" test or not. (*Id.* at 2). Defendants assert that the Notice meets or exceeds the threshold requirements on its face and that Richmond's "challenges" are for the purposes of

---

[4] Defendants filed the motion for summary judgment before this Court granted the emergency motion to stay the NRS Chapter 40 process with respect to the "similarly situated owners." (*Compare* Mot. for Summ. J. (#18), *with* Order (#19)).

delay. (*Id.* at 3). Defendants argue that their homes have a common product defect: their "Aspen-manufactured, vertical forced air units were made with galvanized A-frame struts that were punched and sheared *after* they were galvanized–defeating the corrosion purpose of the process and directly causing the degradation (rust) and discharge of rusty water and air onto the property and persons of the owners." (*Id.*). Defendants contend that their Notice was based on (1) the visual inspection of the majority of homes in Sunrise Valley Estates and direct interior inspections of 10 homes that confirmed the identification of the product and its damage; (2) visual and intrusive inspections of a very large number of the same conditions in the Seasons community; and (3) the inspection, testing, discovery, resolution and documented repair of 260 homes by Richmond in the exact same condition at the Echo Canyon community. (*Id.* at 4). Defendants assert that this constitutes a "valid and reliable sampling." (*Id.*). Defendants assert that the Notice would be sufficient without reference to the same documented problem in other communities. (*Id.* at 4 n.2). Defendants assert that their request for Richmond to work with them on any similarly-situated inspections is consistent with NRS Chapter 40. (*Id.* at 5).

In response, Richmond asserts that the primary issue that the Court must determine is "whether the Chapter 40 Notice satisfied the requirements of NRS Chapter 40 to provide notice on behalf of all homeowners in the Sunrise Valley Estates development, such that [it] is required to take action in response to the Notice." (Opp'n to Mot. to Summ. J. (#21) at 5). Richmond contends that the Notice is statutorily defective and fails to provide proper notice of Defendants' claims on behalf of unnamed homeowners within the Sunrise Valley Estates development. (*Id.* at 6). Richmond notes that the Notice does not identify the homes in which the FAUs were inspected and notes that Kreitenberg's report only demonstrates that he examined two FAUs out of 316 homes in the development. (*Id.* at 13). Richmond argues that the supplement does not resolve the insufficiencies. (*Id.* at 15 n.9). Richmond contends that supplement is irrelevant to this Court's determination because it is unduly prejudicial. (*Id.* at 15-16). Richmond argues that it will be prejudiced if it is required to address the claims for the unnamed homeowners through Defendants' attorneys because its NRS Chapter 40 rights

7

would be restricted. (*Id.* at 17).

In reply, Defendants state that they supplemented their original Notice in response to this Court's December 11, 2012 order to include the matrix of homes inspected and the complete photo log. (Reply to Mot. for Summ. J. (#22) at 3). Defendants contend that the omission of the matrix and complete photo log was a simple and honest mistake. (*Id.*). Defendants argue that Richmond fails to respond to their "foundational contention that Richmond actually knows what the claim is about and is capable of responding to it." (*Id.* at 4). Defendants assert that the horizontal Aspen fan coil unit was either defective when it left the factory or it was not and that the defective condition exists regardless of when the unit was put into service, what home it is in, who installed it, or who maintains it. (*Id.* at 5-6). For this reason, Defendants assert that there are no relevant subsets within the development that required stratified sampling. (*Id.* at 6). Defendants assert that the ten homes inspected all had Aspen horizontal fan coil units that had rusted. (*Id.*). Defendants assert that because they had observed the same product, defect, and tell-tale signs of failure of the fan coils in other Richmond communities, they could reasonably extrapolate what they saw from a relatively modest sample in Sunrise Valley Estates. (*Id.* at 7). Defendants argue that the Notice only applied to homes within the development that had a horizontal Aspen coil unit. (*Id.* at 8).

The Nevada Supreme Court has held that NRS Chapter 40 provides contractors with an opportunity to repair constructional defects in order to avoid litigation. *D.R. Horton, Inc. v. Eighth Judicial Dist. Court ex rel. County of Clark*, 168 P.3d 731, 737 (Nev. 2007). To ensure that contractors are given an opportunity to repair, the Nevada Legislature requires a claimant to give the contractor notice and, based on that notice, to allow the contractor time and the opportunity to inspect and make repairs when a defect is verified. *Id.* "A claimant's failure to comply with those requirements before filing a constructional defect action results in the dismissal or postponement of that action until the claimant complies with those requirements." *Id.*

Nevada Revised Statute § 40.645 sets forth the requirements for a pre-litigation construction defect notice. One notice may be sent relating to all "similarly situated owners

of residences or appurtenances within a single development" that allegedly have common constructional defects if:

> (a) An expert opinion is obtained concerning the cause of the common constructional defects and the nature and extent of the damage or injury resulting from the common constructional defects;
>
> (b) That expert opinion concludes that based on <u>a valid and reliable representative sample</u> of the components of the residences and appurtenances included in the notice, it is the opinion of the expert that those similarly situated residences and appurtenances may have such common constructional defects . . .

Nev. Rev. Stat. § 40.645(4)(a)-(b) (emphasis added).

In *D.R. Horton*, the Nevada Supreme Court held that an "adequate extrapolated pre-litigation notice must have a reasonable statistical basis to describe the alleged defects and their locations in reasonable detail sufficient to afford contractors a meaningful opportunity to repair the alleged defects." *D.R. Horton*, 168 P.3d at 735. The Nevada Supreme Court established the reasonable threshold test which every pre-litigation notice must satisfy if challenged by a contractor. *Id.* at 739. Under the test, an extrapolated notice is valid only if it identifies the subset or characteristics of the subset to which it applies. *Id.* at 740. The Nevada Supreme Court held that, in order to achieve the minimum statistical basis that the reasonable threshold test requires, the district court should "require the claimants' expert to test and verify the existence of the alleged defect in at least one of the homes in each subset of homes included within the scope of the extrapolated notice. Additionally, the claimants must provide the address of each home tested and clearly identify the subset of homes to which the pre-litigation notice applies." *Id.* The district court must employ its wide discretion in determining whether a valid and representative sample has been used for the size and make-up for each subset. *Id.* In exercising its discretion, the district court may determine that a notice is not reasonable unless a defect is confirmed in more than one home in each subset. *Id.*

The Court finds that the Notice and supplement do not meet the reasonable threshold test at this time. The Court notes that of the 316 homes in the Sunrise Valley Estates development, Kreitenberg only inspected one home internally–5886 Rainbow Bridge–where

9

the alleged defect existed.[5]  The Court notes that the matrix demonstrates that Kreitenberg did not inspect any other homes internally, but rather observed exterior staining from the outside of the homes.  Although Defendants state that there are no subsets because the defect exists in all of the homes regardless of plan or model, the Court finds that one interior home inspection to confirm that a house with exterior staining contains the Aspen horizontal cased evaporator coil frames is not a valid and representative sample to give notice for all "similarly-situated owners."  As such, the Notice and supplement on behalf of all similarly-situated owners are not reasonable under the circumstances.[6]  Accordingly, the Court denies Defendants' motion for summary judgment (#18) and grants Richmond's request for declaratory relief that the Chapter 40 Notice and supplement are statutorily defective with respect to "similarly situated owners."[7]

///
///
///
///
///
///
///
///

---

[5] Although Defendants argue that Kreitenberg conducted direct interior inspections of the ten homes and confirmed the identification of the product, neither the matrix nor photo log confirms this.

[6] The Court notes that if Kreitenberg conducts interior inspections on more homes listed in the matrix and finds the Aspen horizontal cased evaporator coil frames in those homes, the Court would be more likely to find that the reasonable threshold test has been met. The Court further finds that, although there are other Richmond communities with the same problem, NRS § 40.645(4)(b) requires a "valid and reliable representative sample of the components of the residences and appurtenances included in the notice." *See* Nev. Rev. Stat. § 40.645(4)(b).  Because the Notice is for residences in the Sunrise Valley Estates development the valid and reliable representative sample must be taken from that development.

[7] The Court finds that the parties did not dispute the sufficiency of the Notice with respect to the named Defendants.

10

**CONCLUSION**

IT IS ORDERED that Defendants' Motion for Summary Judgment (#18) is DENIED.

IT IS FURTHER ORDERED that Richmond American's request for declaratory relief is GRANTED. The Court finds that Defendants' NRS Chapter 40 Notice (and supplement) are statutorily defective as to the "similarly situated owners." The Court finds that the Notice is sufficient to the named Defendants and the parties shall proceed with the NRS Chapter 40 process with respect to the named Defendants.

The Clerk of the Court shall enter judgment accordingly.

Dated this 11th day of March, 2013.

_____
United States District Judge