**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RICHMOND AMERICAN HOMES OF NEVADA, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RICHARD STANTON et al., | ) ) |
| Defendants. | ) ) ) |
| _____ | ) |

2:12-cv-1908-RCJ-CWH

**ORDER**

Currently before the Court is Defendants' Motion for Reconsideration, or in the Alternative, to Clarify this Court's March 14, 2013 Order (#31).

**BACKGROUND**

On November 7, 2012, Plaintiff Richmond American Homes of Nevada, Inc. ("Richmond"), a Colorado corporation, filed a complaint for declaratory relief in this Court against Defendants Richard Stanton, Zayda Bustos, and Anthony and Devron Turner (collectively "Defendants"). (Compl. (#1) at 1-2). The complaint alleged the following. (*Id.* at 2). Stanton was the owner of 5972 Balsam Pine Drive, Las Vegas, Nevada 89142. (*Id.*). Bustos was the owner of 2729 Morning Break Court, Las Vegas, Nevada 89142. (*Id.*). The Turners were the owners of 5871 Windy Point Trial, Las Vegas, Nevada 89142. (*Id.*). Defendants owned homes built and sold by Richmond in a development known as Sunrise Meadows aka Sunrise Valley Estates. (*Id.*). On September 24, 2012, Defendants sent Richmond a statutory notice of construction defects ("the Notice") pursuant to NRS §§ 40.600-40.695. (*Id.*).

The complaint alleged the following. (*Id.*). The Notice purported to give notice on behalf

of Defendants and all similarly-situated, unnamed homeowners in the Sunrise Valley Estates development which consisted of a total of 316 homes. (*Id.* at 2-3). The Notice informed Richmond that Defendants alleged defects in the Aspen horizontal cased evaporator coil frames within their homes. (*Id.* at 3). Richmond alleged that the Notice failed to comport with the requirements of NRS § 40.645, that Defendants lacked standing to pursue claims on behalf of all homeowners, that the Notice improperly attempted to prevent Richmond from sending notice directly to homeowners regarding inspections and claims, and that Defendants' claims were not supported by inspection of a "valid and reliable representative sample" of the homes at issue. (*Id.*).

In the first and only claim for relief, Richmond alleged that an actual controversy existed between Richmond and Defendants as to the parties' rights, responsibilities, and obligations pursuant to NRS Chapter 40 and the validity, scope, and sufficiency of the Notice. (*Id.* at 4). Richmond asserted that the Notice was statutorily defective and failed to provide proper notice of Defendants' claims on behalf of homeowners within Sunrise Valley Estates.[1] (*Id.*). Richmond asserted that the number of homes allegedly inspected do not constitute a "valid and reliable representative sample" pursuant to NRS § 40.645(4)(b)[2]. (*Id.* at 5). Richmond sought reasonable attorneys' fees, costs, expert costs, and expenses; a declaration of rights, responsibilities, and obligations between the parties, and a stay of the NRS Chapter 40 period pending the resolution of this matter. (*Id.*).

Richmond attached a copy of the Notice to the complaint. (*See* Notice (#1) at 8-46). The Notice stated that it was "being sent on behalf of [Defendants], individually and on behalf of all similarly situated homeowners in the Sunrise Valley Estates (hereinafter 'Claimants')."

---

[1] Richmond does not dispute the sufficiency of the Notice as to the named Defendants. (Reply to Mot. to Stay (#16) at 3, 5; Opp'n to Mot. for Summ. J. (#21) at 3). Richmond disputes the sufficiency of the Notice as to the unnamed similarly-situated home owners in Sunrise Valley Estates. (Reply to Mot. to Stay (#16) at 3, 5; Opp'n to Mot. for Summ. J. (#21) at 5).

[2] The complaint cites NRS § 40.6452(4) multiple times in regard to the "valid and reliable representative sample." (*See* Compl. (#1) at 3-5). The Court believes that Richmond meant to cite to NRS § 40.645(4)(b).

(*Id.* at 9). The Notice informed Richmond that Claimants were making a claim against it for a common mechanical system defect in their homes. (*Id.*). The defect involved Aspen-made horizontal cased evaporator coil frames that were prematurely corroding because they had been designed, manufactured, supplied and installed with untreated, exposed metal edges and surfaces, including sheared and punched frame struts and self drilling/tap screws. (*Id.*).

The Notice was made and based on the expert report of Harvey Kreitenberg and Associates and was attached to the Notice. (*Id.* at 9-10). The Notice stated that the expert report was

> based on a valid and reliable representative sample and inspection of the components of the residences and appurtenances within the Sunrise Valley Estates development. This include[d] an inspection of a representative number of homes and many visual inspections confirming the same defect throughout the community regardless of location, building, or model type, and/or other variables unrelated to the defective fan coils and resulting damage–which [were] the same or substantially similar throughout the homes. The report is also based on Mr. Kreitenberg's evaluation of this same defect in other communities within Las Vegas, Nevada, and some of this information is well known to you because you have already actively investigated, litigated and/or resolved those matters. So, the information upon which the notice is based is set forth with specificity in Mr. Kreitenberg's report, or is otherwise already in your possession.

(*Id.* at 10). The Notice also stated that Claimants had reason to believe that Richmond was presently prosecuting a legal action against Aspen Manufacturing Holdings, Inc., the manufacturer of the defective fan coil housing units, based on the same defects identified in the Notice, but in another Las Vegas community called Echo Canyon. (*Id.* at 10-11). The Notice stated that the same defect was under investigation in another Las Vegas community called Seasons based on another NRS Chapter 40 pre-litigation notice. (*Id.* at 11). The Notice stated that the current notice was independent of the other notices. (*Id.*). The Notice stated that "[i]n related instances, you have already performed such inspections and already know about the claims." (*Id.* at 12).

Kreitenberg's expert report contained various pictures of five different residences in the Sunrise Valley Estates development. (Kreitenberg Report (#1) at 31-44). The report stated in part:

> The opinions set forth in this report are based on a valid and reliable representative sample of the common heating and air conditioning systems used

3

> in the residences of the development and further supported by my investigations and evaluation of data from two other Las Vegas communities with the same problem: Echo Canyon and Seasons. The opinions are also based on a survey of resultant property damages evidenced at a majority of homes within the development; notably, the presence of rust stains on landscape rock which is consistent with the same defect in every home in this community and others like it. Additionally, there are homeowner/occupant complaints and confirmation of the reported conditions. For these reasons, it is my opinion that the defects and damages identified in this report exist in all homes throughout the development, which are all similarly situated regardless of plan or model type, or any other design or construction variable unless otherwise noted.

(*Id.* at 29).

The Notice stated that in order to satisfy the inspection requirements of NRS Chapter 40, Defendants "submit that any such inspections, to the extent reasonable and necessary, must be agreed, conducted and coordinated with the above-referenced law firm. The failure to do so may result in legal action and/or equitable action to preserve the legal rights and protect the interests of the development's owners." (*Id.* at 12). The Notice also stated that "[a]t the request of the Claimants, all communications, written, verbal or otherwise–including those to similarly situated development members, are requested to be made to, and through, the law firm identified below." (*Id.* at 13).

In November 2012, Richmond filed an Emergency Motion to Stay NRS Chapter 40 Process Pending Outcome of Declaratory Relief Action. (Mot. to Stay (#10)). In December 2012, this Court granted the motion to stay with respect to whether the Notice was sufficient as to the similarly situated homeowners but not to the named Defendants. (Order (#19) at 8). In that order, the Court noted that:

> The Court will need to determine whether the Notice satisfies the reasonable threshold test. Kreitenberg's report states that his report is based on a valid and a reliable representative sample but does not detail what that sample was. For instance, the report only contains pictures of five different homes in the Sunrise Valley Estates, but Defendants now claim in the pleadings that Kreitenberg looked at 10 homes. (*See* Opp'n to Mot. to Stay (#15) at 13 n.8). The Notice does not contain the address of each home tested. Moreover, both Kreitenberg's report and Defendants' pleadings, appear to argue that Richmond has sufficient notice of the alleged defects based on similar notices given to it by the Echo Canyon and Seasons' communities.

(*Id.*).

In response to this Court's order, Defendants issued a supplemental notice to

4

Richmond "meant to address some of the concerns reflected in Judge Jones' December 11, 2012 Order." (Supp. Notice (#22-1) at 2). The supplemental notice attached a "matrix of the 10 homes inspected by Mr. Kreitenberg along with his corresponding field notes and photographs." (*Id.*). They also included "some non-expert photographs showing the rust at 8 other homes, taken random by [the attorney's] staff member(s) who were at the community before the notice [went] out." (*Id.*). They included "a site map to indicate where all these homes [were] located within the Sunrise Valley estates community." (*Id.*).

The matrix stated that Kreitenberg had inspected ten homes in Sunrise Valley Estates: 5912 Balsam Pine, 5972 Balsam Pine, 5883 Glory Canyon, 2729 Morning Break, 2693 Mossy Oaks, 5820 Rainbow Bridge, 5826 Rainbow Bridge, 5886 Rainbow Bridge, 2733 Windy Breeze, and 5871 Windy Point. (*Id.* at 3). The matrix stated that Kreitenberg had observed exterior staining at all ten homes. (*Id.*). The matrix also showed that Kreitenberg had only inspected one home internally with respect to looking at the "FAU1 Coil Opnd" and "FAU2 Coil Opnd."[3] (*Id.*). The one home that he inspected, 5886 Rainbow Bridge, contained the "FAU1 Coil Opnd." (*Id.*). The photos attached to the supplement are consistent with the matrix and demonstrate that Kreitenberg only inspected one home internally. (*See* Exhibits (#22-1, 22-2, 22-3)).

On March 14, 2013, this Court denied Defendants' motion for summary judgment. (Order (#29) at 11). This Court granted Richmond's request for declaratory relief and found that Defendants' NRS Chapter 40 Notice (and supplement) were statutorily defective as to the "similarly situated owners." (*Id.*). However, the Court found that the Notice was sufficient to the named Defendants and directed the parties to proceed with the NRS Chapter 40 process with respect to the named Defendants. (*Id.*). In denying summary judgment, this Court found the following:

> the Notice and supplement do not meet the reasonable threshold test at this time. The Court notes that of the 316 homes in the Sunrise Valley Estates development, Kreitenberg only inspected one home internally–5886 Rainbow

---

[3] FAU is the abbreviation for "Forced Air Unit."

5

Bridge–where the alleged defect existed.[4] The Court notes that the matrix demonstrates that Kreitenberg did not inspect any other homes internally, but rather observed exterior staining from the outside of the homes. Although Defendants state that there are no subsets because the defect exists in all of the homes regardless of plan or model, the Court finds that one interior home inspection to confirm that a house with exterior staining contains the Aspen horizontal cased evaporator coil frames is not a valid and representative sample to give notice for all "similarly-situated owners." As such, the Notice and supplement on behalf of all similarly-situated owners are not reasonable under the circumstances.[5] Accordingly, the Court denies Defendants' motion for summary judgment (#18) and grants Richmond's request for declaratory relief that the Chapter 40 Notice and supplement are statutorily defective with respect to "similarly situated owners."[6]

(*Id.* at 9-10).

The pending motion now follows.

## LEGAL STANDARD

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F.Supp.2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F.Supp.2d 1280, 1288 (D. Nev. 2005).

---

[4] Although Defendants argue that Kreitenberg conducted direct interior inspections of the ten homes and confirmed the identification of the product, neither the matrix nor photo log confirms this.

[5] The Court notes that if Kreitenberg conducts interior inspections on more homes listed in the matrix and finds the Aspen horizontal cased evaporator coil frames in those homes, the Court would be more likely to find that the reasonable threshold test has been met. The Court further finds that, although there are other Richmond communities with the same problem, NRS § 40.645(4)(b) requires a "valid and reliable representative sample of the components of the residences and appurtenances included in the notice." *See* Nev. Rev. Stat. § 40.645(4)(b). Because the Notice is for residences in the Sunrise Valley Estates development the valid and reliable representative sample must be taken from that development.

[6] The Court finds that the parties did not dispute the sufficiency of the Notice with respect to the named Defendants.

**DISCUSSION**

Defendants file a motion for reconsideration, or in the alternative, a motion to clarify this Court's March 14, 2013 order. (Mot. for Reconsideration (#31) at 1). Defendants argue that this Court mistakenly found that the Defendants' expert had only confirmed the identity of the allegedly defective evaporator coil in one home based on the inspection matrix. (*Id.* at 2). Defendants assert that the Court assumed from the entry in the inspection matrix that the expert had not confirmed the identity of the defective product by looking inside nine other homes but rather only confirmed the problem in those nine homes based on exterior observations of staining. (*Id.*). Defendants contend that this is not what the entry says or means. (*Id.*). Defendants contend that the entry refers to whether the expert removed the lid of each unit that was inspected and that the expert's field notes and photographs accompanying the matrix plainly show that the expert was inside all 10 of the homes. (*Id.* at 2-3). Defendants admit that the expert did not lift the lid off all of the units to actually see rust staining and damage but the expert did confirm that the same model units were failing in each home based on exterior observations that they were all discharging rust. (*Id.* at 3). Defendants acknowledge "in hindsight, that the inspection matrix could have been made even clearer, but it was not confusing or misleading in context." (*Id.* at 4). Defendants contend that "in conjunction with the interior photographs and photograph logs, it is clear that [their] expert had been in all 10 homes and positively confirmed and documented the defective product." (*Id.*). Defendants acknowledge that the matrix identified 9 of the 10 homes as "N/I" for "not inspected" but that did not mean that the expert did not go into the homes but rather the expert did not remove the lid in every home at the time. (*Id.*). Defendants include exterior photos of various homes. (*Id.* at 9-13).

Richmond filed a response and Defendants filed a reply. (Resp. to Mot. for Reconsideration (#32); Reply to Mot. for Reconsideration (#33)).

The Court finds that Defendants move for reconsideration based on the notion that this Court committed clear error in its previous order. This Court has re-reviewed Defendants' supplement to their original NRS Chapter 40 notice, located at docket #22-1, 22-2, 22-3, and

7

does not find clear error in its previous decision. The Court appreciates that it may be interpreting Defendants' inspection matrix differently from how Defendants intended. However, the Court finds that based on its review of the matrix and the accompanying photo log and notes, the expert did "not inspect," as stated in the matrix, the forced air units of 9 of the 10 homes. (*See* Supp. Notice (#22-1) at 3). Additionally, when this Court re-reviews the photo log and notes of the expert, the Court finds that the expert took interior photos of only one home–5886 Rainbow Bridge–while including exterior photos of other homes. (*See* Supp. Notice (#22-1) at 4-43; Supp. Notice (#22-2) at 1-44; Supp. Notice (#22-3) at 1-14). The Court finds that its interpretation that Kreitenberg only inspected one home internally is consistent with the evidence before it. Accordingly, this Court does not find clear error with its March 14, 2013 order and denies the motion for reconsideration.

Defendants alternatively ask this Court to clarify its order. (Mot. for Reconsideration (#31) at 6). Specifically, Defendants state that if the Court believes that their "expert must re-enter the homes already inspected, or a greater number of homes, then Defendants will certainly do so and further supplement their notice." (*Id.*). As noted above, this Court, in a footnote, noted that "if Kreitenberg conducts interior inspections on more homes listed in the matrix and finds the Aspen horizontal cased evaporator coil frames in those homes, the Court would be more likely to find that the reasonable threshold test has been met." (*See* Order (#29) at 10 n.6).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Reconsideration, or in the Alternative, to Clarify this Court's March 14, 2013 Order (#31) is DENIED.

Dated This 16th day October, 2013.

_____
United States District Judge

8